**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**LITTLE ROCK DIVISION**

**TANZA NELSON and**
**HELEN EDWARDS**                                                                        **PLAINTIFFS**

**v.**                                             **Case No.  4:15-cv-00605 KGB**

**JIMMY BANKS, in his official capacity**
**as Warden of the Varner Unit and in his**
**individual capacity, and the**
**ARKANSAS DEPARTMENT OF CORRECTION**                                 **DEFENDANTS**

**OPINION AND ORDER**

Plaintiffs Tanza Nelson and Helen Edwards are former employees of the Arkansas Department of Correction ("ADC") at the Varner Unit.  Both bring suit against the ADC and Jimmy Banks, Warden of the Varner Unit, alleging a variety of claims.  Several motions are pending:  (1) a motion for partial summary judgment filed by Ms. Nelson and Ms. Edwards (Dkt. No. 5); (2) a motion to dismiss Ms. Nelson's claims filed by the ADC and Warden Banks (Dkt. No. 6); (3) a motion to dismiss Ms. Edwards's claims filed by the ADC and Warden Banks (Dkt. No. 12); (4) a motion to strike portions of plaintiffs' complaint and amended complaint filed by the ADC and Warden Banks (Dkt. No. 15); and an "alternative" motion to remand included in Ms. Nelson's response to defendants' motion to dismiss and motion to strike (Dkt. No. 20).

**I.      Background**

The ADC and Warden Banks complain that plaintiffs' counsel "has spliced two completely unrelated lawsuits into a single complaint," but they make no request to sever Ms. Nelson and Ms. Edwards's claims into separate suits (Dkt. No. 7, at 1).  The Court will not issue a ruling on whether these cases should be severed unless properly requested by motion.

However, to evaluate the pending motions, the Court will present the factual and procedural backgrounds of Ms. Nelson and Ms. Edwards's cases separately.

### A.      Tanza Nelson

Ms. Nelson was terminated from the ADC on September 2, 2011 (Dkt. No. 4, ¶ 25).  She originally filed suit on January 27, 2012.  *See* Complaint, *Nelson v. Banks*, Case No. 5:12-cv-00292 (E.D. AR July 27, 2012) (Dkt. No. 1).  Her case was voluntarily dismissed on June 9, 2014.  *See* Order, *Nelson v. Banks*, Case No. 5:12-cv-00292 (E.D. AR June 9, 2014) (Dkt. No. 20).  She filed her present action in the Circuit Court of Pulaski County, Arkansas, on June 8, 2015 (Dkt. No. 7, at 4).  The ADC and Warden Banks removed the case to this Court on September 29, 2015 (Dkt. No. 1, at 1).

The factual allegations in Ms. Nelson's earlier filed action are identical to the allegations she makes now.  In both actions, she named as defendants the ADC and Warden Banks in his official and individual capacity.  This Court summarized her factual allegations in its Opinion and Order on defendants' motion to dismiss in the earlier filed action, and the Court adopts that summary now.  *See* Opinion and Order at 1-4, *Nelson v. Banks*, Case No. 5:12-cv-00292 (E.D. AR May 9, 2013) (Dkt. No. 11).  In her current case,[1] Ms. Nelson brings claims for retaliation as well as racial and gender discrimination pursuant to 42 U.S.C. § 1981 and 42 U.S.C. § 1983.  She asserts racial and gender discrimination claims, as well as a retaliation claim, under the Arkansas Civil Rights Act ("ACRA"), Ark. Code Ann. § 16-123-101 *et seq*.  She also claims that her rights of access to the courts and free speech under the First Amendment were violated.

---

[1]   In her earlier filed action, Ms. Nelson included discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*.  She does not include Title VII claims in her present action.

### B.     Helen Edwards

Ms. Edwards, like Ms. Nelson, previously worked at the ADC, but her employment was terminated.   At this stage of the proceedings, the Court accepts as true the allegations in the amended complaint (Dkt. No. 4).   While working for the ADC, Ms. Edwards also worked for the Varner Unit Employee Corporation ("VUEC"), an employee benefit corporation.   Ms. Edwards contends that she was not compensated for her work for VUEC, which she claims violated the Arkansas Minimum Wage Act.

In December 2010, Warden Banks directed VUEC's Chief Executive Officer to loan an employee an amount of money in excess of $100.   Making a loan of that size required member approval, but no such approval was given.   Despite that fact, Ms. Edwards alleges that VUEC's Chief Executive Officer followed Warden Banks's orders and made the loan to the employee who failed to repay it in a timely manner, another violation of VUEC policies.   Warden Banks, a Caucasian male, was not disciplined for these violations.

Ms. Edwards, an African American female, complained about this behavior to Warden Banks and ADC management.   Ms. Edwards claims that Warden Banks did not address Ms. Edwards's complaint, but rather he began investigating and scrutinizing her in the following weeks.   Ms. Edwards admitted to taking laundry detergent and other items for personal use, and she maintains she was fired as a result.   Caucasian male employees who had done far worse were not terminated as a result of their transgressions, according to Ms. Edwards.

The exact date of Ms. Edwards's termination does not appear in the amended complaint, but she originally filed suit in the Circuit Court of Jefferson County, Arkansas, on August 19, 2011, against the ADC, Warden Banks, and VUEC (Dkt. No. 13, at 2).   In her original action, she alleged claims of racial and gender discrimination pursuant to § 1983 as well as violations of

the Arkansas Whistle-Blower Act ("AWBA"), Ark. Code Ann. §§ 21-1-601, *et seq.*; the Arkansas Minimum Wage Act ("AMWA"), Ark. Code Ann. §§ 11-4-201, *et seq.*; and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.* (Dkt. No. 12-2, at 1).

On September 25, 2014, the Jefferson County Circuit Court granted defendants' various motions to dismiss Ms. Edwards's case, dismissing all of her claims against the ADC and Warden Banks without prejudice and her claims against VUEC with prejudice. Ms. Edwards did not appeal this decision (Dkt. No. 13, at 3). Instead, on September 25, 2015, her counsel amended Ms. Nelson's complaint in this action to include Ms. Edwards's claims (Dkt. No. 4). Ms. Edwards raises the same claims against the ADC and Warden Banks as she did in her original action, while adding race discrimination and retaliation claims pursuant to the ACRA. She does not reallege her claims against VUEC, which is not a party to this suit.

## II.     Jurisdiction

As a preliminary matter, the Court must address the jurisdictional question raised in the parties' filings. This case was initially filed in the Circuit Court of Pulaski County, Arkansas. On September 29, 2015, Warden Banks and the ADC[2] removed the case to this Court and filed a motion to dismiss Ms. Nelson's claims. In their motion to dismiss, Warden Banks and the ADC raise the defense of sovereign immunity (Dkt. No. 7, at 7-8). Ms. Nelson argues that the Court does not have jurisdiction over this case and must remand it or, alternatively, that by removing this case, Warden Banks and the ADC waived sovereign immunity (Dkt. No 20, at 1). The Court will address Ms. Nelson's wavier argument *infra* in section IV.C of this Opinion and Order.

---

[2]     Ms. Nelson makes a passing reference to an argument that this case should be remanded because the notice of removal was filed without the consent of all defendants (Dkt. No. 20, at 4). *See* 28 U.S.C. § 1446(b)(2)(A). Warden Banks and the ADC are the only defendants in this case, and they are represented by the same counsel, who filed notice of removal on behalf of both defendants. For these reasons, the Court rejects Ms. Nelson's request for a remand based on the consent argument.

As for Ms. Nelson's jurisdictional argument, federal district courts have removal jurisdiction over "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."  28 U.S.C. § 1441.  Ms. Nelson and Ms. Edwards allege violations of federal law, meaning this Court has original jurisdiction over their case.  28 U.S.C. § 1331.  Therefore, the Court has removal jurisdiction.  Warden Banks and the ADC's asserted defense of sovereign immunity to certain state law claims does not destroy this Court's jurisdiction.  *See, e.g., Tarasenko v. Univ. of Arkansas*, 63 F. Supp. 3d 910, 921 (E.D. Ark. 2014) (dismissing state law claims on the basis of sovereign immunity but addressing remaining claims in employment discrimination suit).  Similarly, even if some of Ms. Nelson's claims may be barred by the Eleventh Amendment, "the presence in an otherwise removable case of a claim that the Eleventh Amendment may bar does not destroy removal jurisdiction that would otherwise exist."  *Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 386 (1998).  Therefore, the Court finds that it has removal jurisdiction.  Ms. Nelson and Ms. Edwards's "alternative" motion to remand is denied (Dkt. No. 20).

### III.    Motion For Partial Summary Judgment

Ms. Nelson and Ms. Edwards moved for partial summary judgment dismissing any defenses the ADC and Warden Banks may have for service and process issues (Dkt. No. 5).  The ADC and Warden Banks responded to the motion (Dkt. No. 9).  In their answer to the original complaint, Warden Banks and the ADC reserved their right to object on the basis of insufficiency of process and of service of process (Dkt. No. 3, ¶ 44).  Warden Banks and the ADC have not taken any action in regard to these potential defenses.

Ms. Nelson and Ms. Edwards's motion is denied, as they cite no authority upon which the Court should grant their motion and failed to follow the requirements of Local Rules 7.2 and

56.1 of the Local Rules of the United States District Court for the Eastern and Western Districts of Arkansas when filing their motion.  Local Rule 7.2 provides that certain motions, including motions for summary judgment, must "be accompanied by a brief consisting of a concise statement of relevant facts and applicable law."  Local Rule 56.1 provides that in addition to the requirements set forth in Local Rule 7.2, any party moving for summary judgment must "annex to the notice of motion a separate, short and concise statement of the material facts as to which it contends there is no genuine dispute to be tried."  Ms. Nelson and Ms. Edwards did not file a brief in support of their motion for partial summary judgment or a statement of undisputed material facts.  Accordingly, their motion for partial summary judgment is denied (Dkt. No. 5).

### IV.    Motion To Dismiss Tanza Nelson's Claims

Warden Banks and the ADC filed separate motions to dismiss against Ms. Nelson and Ms. Edwards.  They support their motion with five arguments regarding dismissal of Ms. Nelson's claims:  (1) her ACRA claims are barred by the statute of limitations; (2) her ACRA claims are barred by sovereign immunity; (3) her ACRA claims should be dismissed for failing to state a claim; (4) her First Amendment claims should be dismissed for failing to state a claim; and (5) her discrimination claims should be dismissed because she failed to state a cognizable claim for relief (Dkt. No. 6, at 1-2; Dkt. No. 7, at 12-15).

### A.    Standard Of Review

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft*, 556 U.S. at 678. (citing *Twombly*, 550 U.S. at 556).

"While a complaint attacked by a [Federal] Rule [of Civil Procedure] 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (citations omitted). "[T]he complaint must contain facts which state a claim as a matter of law and must not be conclusory." *Briehl v. General Motors Corp.*, 172 F.3d 623, 627 (8th Cir. 1999). "When ruling on a motion to dismiss, the district court must accept the allegations contained in the complaint as true and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001).

## B.     Statute Of Limitations

Ms. Nelson was terminated on September 2, 2011.  Her original action was filed on July 27, 2012, and voluntarily dismissed on June 9, 2014.  She filed this action on June 8, 2015, which was more than three years after she was fired but less than one year after her original action was voluntarily dismissed.

The ADC and Warden Banks argue that her claims under the ACRA[3] are untimely. According to the ADC and Warden Banks, "[i]n Arkansas, there is a three-year limitations

---

[3]     The ADC and Warden Banks do not make an argument that Ms. Nelson's discrimination claims brought pursuant to § 1981 and § 1983 are time barred. As these claims were alleged in Ms. Nelson's original action, non-suited, and then refiled within one year, such an argument, even if made, may not succeed. *See Whittle v. Wiseman,* 683 F.2d 1128, 1129 (8th Cir. 1982).  The Court notes that Ms. Nelson's § 1981 claims are either governed by the four year statute of limitations established by 28 U.S.C. § 1658 or, like her § 1983 claims, by Arkansas law.  *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004) (finding that claims arising under the 1991 amendments to § 1981 are governed by the statute of limitations provided by 28 U.S.C. § 1658, while claims arising under earlier versions of the statute are governed by the personal injury statute of limitations of the forum state).  Because the ADC and

period for claims asserted under 42 U.S.C. § 1983" (Dkt. No. 7, at 5).  Ms. Nelson filed this suit more than three years after being terminated.  However, she filed her original suit within three years of being terminated, and she filed this action within one year after her original action was voluntarily dismissed.  Arkansas's saving statute provides that if "any action" is commenced within the appropriate limitations period, "and the plaintiff therein suffers a nonsuit . . . the plaintiff may commence a new action within one (1) year after the nonsuit suffered."  Ark. Code Ann. § 16-56-126.  The ADC and Warden Banks argue that Ms. Nelson's ACRA claims are not saved under the savings statute because she did not include any ACRA claims in her earlier suit (Dkt. No. 7, at 7).

In response, Ms. Nelson argues that her original suit included claims under the ACRA. According to Ms. Nelson, "Paragraph 27 of the previous Complaint plead a claim for violation of the 'constitution.' Paragraph 26 contained a claim under the United States Constitution. The constitution referenced in paragraph 27 was the state constitution. Thus, the claim was made. Given Rule 8's command, that pleadings be interpreted liberally, the motion should be denied" (Dkt. No. 20, at 6).

The Court has reviewed the complaint from Ms. Nelson's original suit.  There is no mention of the ACRA or any claim under state law.  Ms. Nelson alleged retaliation as well as racial and gender discrimination in violation of Title VII, and she sued Warden Banks in his official and individual capacities under § 1981 and § 1983 for racial and gender discrimination and for the alleged denial of her access to the courts and free speech rights under the First Amendment of the United States Constitution.  No other claims are mentioned.

---

Warden Banks do not make the argument as to § 1981 and § 1983 claims, the Court need not resolve it.

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  While the Court must construe the complaint liberally in the light most favorable to the plaintiff, "the complaint must still provide the defendant with 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'"  *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  In *Eckert*, the district court found, and the Eighth Circuit Court of Appeals agreed, that the defendant did not properly plead a claim under the Employee Retirement Income Security Act of 1974; 29 U.S.C. §§ 1001, *et seq.* ("ERISA"), when it "did not mention an ERISA violation in its third-party complaint that sought relief only on the basis that Pirelli violated [an asset purchase agreement]."  *Id.*  The defendant referenced ERISA twice in the jurisdictional section of the complaint, but the Eighth Circuit found that this was insufficient to provide the defendant with fair notice of a potential ERISA claim.  *Id.* at 807.  Ms. Nelson's complaint in her original action provides even less notice of a potential ACRA claim than the deficient complaint in *Eckert*.  Therefore, the Court finds that Ms. Nelson's earlier suit did not include a claim under the ACRA, even affording Ms. Nelson's complaint a liberal interpretation as required.

The Court notes that of the "numerous cases in the federal court system that attempt to interpret and apply the ACRA" nearly all of them "simply add the ACRA claims as pendent to the already well-established Title VII and section 1983 discrimination claims."  Michael Mosley et. al., *Sixteen Years of Litigation Under the Arkansas Civil Rights Act: Where We Have Been and Where We Are Going*, 32 U. Ark. Little Rock L. Rev. 173, 178 (2010).  However, these are distinct causes of action, and in some circumstances, there are meaningful differences between ACRA claims and their federal law counterparts.  *See id.* (examining these differences and

undeveloped areas of the law under the ACRA).  For example, in her original action, Ms. Nelson

brought a retaliation claim pursuant to Title VII.  *See* Complaint, *Nelson v. Banks*, Case No.

5:12-cv-00292 (E.D. AR July 27, 2012) (Dkt. No. 1, ¶ 28).  In this action, she brings retaliation

claims against the ADC and Warden Banks under the ACRA (Dkt. No. 4, ¶ 53).  Under Title

VII, Warden Banks cannot be held individually liable for retaliation.  *Bonomolo-Hagen v. Clay

Cent.-Everly Cmty. Sch. Dist.*, 121 F.3d 446, 447 (8th Cir. 1997).  Under the ACRA, he could be

held liable in his individual capacity for retaliation.  *Calaway v. Practice Mgmt. Servs., Inc.*,

2010 Ark. 432, *1 (2010); *see also* Madeline L. Kurrus, *Taking It Personally: Holding

Individual Supervisors Liable for Retaliation Under the Arkansas Civil Rights Act*, 65 Ark. L.

Rev. 873, 874–75 (2012) ("The incongruous result of this holding is that even though supervisors

cannot be held liable in their individual capacities for acts of discrimination under the ACRA or

Title VII, supervisors may be held liable in their individual capacities for alleged acts of

retaliation.").

"Only causes of action pleaded in the non-suited action are tolled by [Arkansas's] one-

year savings statute."  *Baker v. Chisom*, 501 F.3d 920, 922 (8th Cir. 2007).  Ms. Nelson's

complaint in her original case did not include any causes of action under the ACRA.  Therefore,

the Court finds that these claims were not tolled by Arkansas's savings statute, meaning they

were untimely filed.  The ADC and Warden Banks' motion to dismiss Ms. Nelson's ACRA

claims is granted.

### C.     Sovereign Immunity

Ms. Nelson seeks money damages from the ADC and Warden Banks in his official

capacity (Dkt. No. 4, at 10).  The ADC and Warden Banks provide two reasons for why these

claims should be dismissed.  They argue that Ms. Nelson cannot recover damages on her claims

under § 1983 because "[n]either states nor state officials acting in their official capacities are 'persons' within the meaning of 42 U.S.C. § 1983" (Dkt. No. 7, at 8).  They also argue that Ms. Nelson's state law claims under the ACRA should be dismissed based on sovereign immunity.

Ms. Nelson argues that by removing this case from state court, the ADC and Warden Banks waived any claim of sovereign immunity.  She also argues that Congress has abrogated sovereign immunity for her claim and that the ADC and Warden Banks cannot invoke sovereign immunity under state law "because the Arkansas Constitution grant of sovereign immunity expressly does not apply to federal courts" (Dkt. No. 20, at 5).

For the following reasons, the Court finds that sovereign immunity has not been waived or abrogated.  Therefore, the Court dismisses Ms. Nelson's claims for damages against the ADC and Warden Banks in his official capacity.[4]

### 1.      Waiver By Removal

Sovereign immunity can be waived.  *Doe v. Nebraska*, 345 F.3d 593, 597 (8th Cir. 2003). Ms. Nelson argues that removing this case from state court constitutes a waiver, relying on the Supreme Court's decision in *Lapides v. Board of Regents of University System of Georgia*, 535 U.S. 613 (2002), and opinions from the Seventh, Ninth, and Tenth Circuits interpreting that decision (Dkt. No. 20, at 4-5).   In *Lapides*, the plaintiff filed suit against various state government officials in state court, alleging violations of both federal and state law.  *Lapides*, 535 U.S. at 616.  The defendants were unable to claim sovereign immunity as a defense in state court, as a statute "waived sovereign immunity from state-law suits in state court."  *Id.*  After

---

[4]   Ms. Nelson appears to also seek reinstatement as an equitable remedy for her claims against the ADC and Warden Banks in his official capacity (Dkt. No. 4, at 10) ("Wherefore, each plaintiff prays for . . . reinstatement . . . .").  State officials may be sued in their official capacity for equitable relief.  *Grantham v. Trickey*, 21 F.3d 289, 295–96 (8th Cir. 1994).  Therefore, Ms. Nelson's claims for reinstatement against the ADC or Warden Banks in his official capacity are not barred by sovereign immunity.

removing the case to federal court, the defendants argued that, while they could not claim sovereign immunity in state court because it had been waived by statute, they had immunity in federal court pursuant to the Eleventh Amendment. *Id.* The Court disagreed, finding that by choosing to remove the case to federal court, the defendants waived Eleventh Amendment immunity. *Id.* at 624. The Court limited its holding "to the context of state-law claims, in respect to which the State has explicitly waived immunity from state-court proceedings." *Id.* at 617. Stated differently, the Court specifically did not "address the scope of waiver by removal in a situation where the State's underlying sovereign immunity from suit has not been waived or abrogated in state court." *Id.* at 617-18.

As Ms. Nelson recognizes, the circumstances in *Lapides* are distinct from the issue presented to the Court in this case. Unlike the State defendants in *Lapides*, the ADC and Warden Banks were entitled to sovereign immunity in state court. Ms. Nelson does not appear to claim that the ADC or Warden Banks waived sovereign immunity prior to removing this case to federal court, and no statute abrogated that defense. In fact, even if Ms. Nelson could bring her ACRA claims here, the ACRA specifically states that it does not abrogate sovereign immunity. Ark Code Ann. § 16-123-104. Therefore, the Court's limited holding in *Lapides* does not resolve the issue of waiver in this case. However, Ms. Nelson points to decisions from the Seventh, Ninth, and Tenth Circuits following *Lapides* that she contends "find an implied waiver of Eleventh Amendment sovereign immunity where states removed federal claims as well as state claims" (Dkt. No. 20, at 5). *See Board of Reg. of the Univ. of Wis. Sys. v. Phoenix*, 653 F.3d 448 (7th Cir. 2011); *Embury v. King*, 361 F.3d 562 (9th Cir. 2004); *Estes v. Dep't of Trans*, 302 F.3d 1200 (10th Cir. 2002). She argues that the Court should adopt the reasoning of these decisions and find that the ADC and Warden Banks waived sovereign immunity.

The Court is not aware of any clear precedent from the Eighth Circuit Court of Appeals on this question.  The ADC and Warden Banks identify one decision from a district court within the Eighth Circuit rejecting Ms. Nelson's proposed expansion of the Court's holding in *Lapides*. *Grothoff v. Nixon*, No. 04-4290-CV-C-WAK, 2007 WL 2693835, at *2 (W.D. Mo. Sept. 10, 2007).  Furthermore, at least seven circuits have found that removal does not constitute waiver of sovereign immunity where the State's underlying sovereign immunity from suit has not been waived or abrogated in state court.  *See Bergemann v. Rhode Island Dep't of Envtl. Mgmt.*, 665 F.3d 336, 342 (1st Cir. 2011); *Beaulieu v. Vermont*, No. 13-4198-CV, 2015 WL 5438725, at *10 (2d Cir. Sept. 16, 2015); *Lombardo v. Pa. Dep't of Pub. Welfare,* 540 F.3d 190, 198 (3d Cir. 2008); *Stewart v. N. Carolina*, 393 F.3d 484, 490 (4th Cir. 2005); *Meyers ex rel. Benzing v. Texas,* 410 F.3d 236, 255 (5th Cir. 2005); *Stroud v. McIntosh,* 722 F.3d 1294, 1302 (11th Cir. 2013); *Watters v. Washington Metro. Transit Auth.,* 295 F.3d 36, 39, 42 n. 13 (D.C.Cir. 2002).

Ms. Nelson's reliance on *Phoenix*, *Embury*, and *Estes* is misplaced.  Recently, the Second Circuit Court of Appeals addressed this exact argument, where the plaintiff cited to these very cases and argued that they "hold that a state's voluntary participation in federal court litigation constitutes a waiver of the state's general sovereign immunity."  *Beaulieu v. Vermont*, No. 13-4198-CV, 2015 WL 5438725, at *8 (2d Cir. Sept. 16, 2015).  The Second Circuit Court of Appeals found that plaintiff's understanding of these opinions was:

> [A] misreading of the law of the relevant circuits, all of which adhere to the generally accepted proposition that a state defendant's removal of an action to federal court waives the state's objection, based on the Eleventh Amendment, to the exercise of federal jurisdiction, but do not subscribe to the proposition advocated by Plaintiffs that by such removal the defendants also waive the state's general sovereign immunity.

*Id.*  The Second Circuit's analysis of the law in the Seventh, Ninth, and Tenth Circuits is persuasive, and the Court adopts it as its own.  *Id.* at *8−10.  The ADC and Warden Banks's decision to remove this case does not constitute a waiver of their general sovereign immunity.

## 2.  Abrogation

Ms. Nelson also argues that the sovereign immunity defense to her federal racial and gender discrimination claims has been abrogated.  Ms. Nelson brings her federal claims pursuant to § 1983,[5] which does not abrogate state sovereign immunity.  *Smith v. Beebe*, 123 F. App'x 261, 262 (8th Cir. 2005) ("Congress did not abrogate the states' sovereign immunity when it enacted 42 U.S.C. § 1983.").  Furthermore, in order for a § 1983 claim to be successful, the discriminating party must be a "person."  It is clearly established that the state, and state officials acting in their official capacities, are not "persons" within the meaning of § 1983.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64, 71 (1989).  The Court finds that Ms. Nelson cannot recover money damages from the ADC or Warden Banks in his official capacity for her § 1983 claim of racial and gender discrimination.

## 3.  State Sovereign Immunity In Federal Court

Ms. Nelson also argues that "Defendants cannot invoke sovereign immunity because the Arkansas Constitution grant of sovereign immunity expressly does not apply to federal courts" (Dkt. No. 20, at 5).  It is well established that the State of Arkansas can assert sovereign immunity as a defense in federal court.  *See Okruhlik v. Univ. of Arkansas ex rel. May*, 255 F.3d 615, 627 (8th Cir. 2001) (noting that the State of Arkansas can assert sovereign immunity under the Arkansas Constitution in federal court).  The Court finds that, even if Ms. Nelson could bring

---

[5]  In her previous suit, which was voluntarily dismissed, Ms. Nelson brought racial and gender discrimination claims under Title VII.  She does not bring Title VII claims in this action, as they would be time barred.  *See* Order at 1-2, Nelson v. Banks et al., Case No. 5:12-cv-292 (E.D. AR June 9, 2014) (Dkt. No. 20).

her ACRA claims in this suit, the ADC and Warden Banks would be permitted to raise sovereign immunity as a defense to Ms. Nelson's claims under the ACRA.

### D.    Qualified Immunity

Ms. Nelson seeks damages from Warden Banks in his individual capacity for racial and gender discrimination pursuant to § 1983 and the ACRA.  Warden Banks moves to dismiss Ms. Nelson's claims against him in his individual capacity on the basis of qualified immunity.

"To prevail at this stage of the proceedings, defendants must show that they are entitled to qualified immunity on the face of the complaint." *Bradford v. Huckabee*, 394 F.3d 1012, 1015 (8th Cir. 2005).  Qualified immunity shields public officials from liability for civil damages if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "[I]t has been clearly established for many years that the Equal Protection Clause prohibits a State, when acting as an employer, 'from invidiously discriminating between individuals or groups' based upon race." *Murphy v. State of Arkansas*, 127 F.3d 750, 755 (8th Cir. 1997) (quoting *Washington v. Davis*, 426 U.S. 229, 239 (1976)).  An individual's "right to be free of invidious discrimination on the basis of sex is certainly clearly established, and no one who does not know about it can be called 'reasonable' in contemplation of law." *Goodwin v. Cir. Ct. of St. Louis County, Mo.*, 729 F.2d 541, 546 (8th Cir. 1984).  Since discrimination based on race and gender are clearly established constitutional rights which a reasonable person would have known, and because Ms. Nelson's complaint alleges that Warden Banks's actions were discriminatory, Warden Banks is not entitled to qualified immunity at this stage of the proceeding.  Therefore, the Court denies Warden Banks's motion to dismiss on the basis of qualified immunity Ms. Nelson's racial and gender discrimination claims.

### E.      First Amendment Claims

The ADC and Warden Banks argue that Ms. Nelson failed to plead facts supporting a First Amendment claim in her complaint. They argue that Ms. Nelson "fails to identify any speech that was restrained by Defendants" and that, even if she did plead facts to support such a claim, "the facts as pled do not evince any speech that is protected by the First Amendment" (Dkt. No. 7, at 10).  Noting that "'[a] public employee's speech enjoys limited protection'" (Dkt. No. 7, at 11) (quoting *Day v. Johnson*, 119 F.3d 650, 657 (8th Cir.1997)), the ADC and Warden Banks argue that Ms. Nelson's complaint does not state facts supporting a First Amendment claim because "the entirety of the 'speech' pled by Plaintiff involves issues surrounding her personal employment and related disciplinary issues," which they claim "is not 'protected speech' under the First Amendment" (Dkt. No. 7, at 12).

Ms. Nelson's amended complaint states that she brings this § 1981 and § 1983 action based on racial and gender discrimination, "as well as denial of her 1st Amendment right to access to courts and free speech" (Dkt. No. 4, at 1).  Her amended complaint also states that "[d]efendants retaliated against Nelson for filing an EEOC Charge, which is a requirement to seek redress for violation of rights in violation of the ACRA.  Nelson's speech was protected and on a matter of public concern.  So Defendants denied her the clearly [sic] rights granted to her under the 1st Amendment and the ACRA" (Dkt. No. 4, at 10).

This Court dismisses Ms. Nelson's ACRA claims as time barred.  In regard to her claims under § 1983, the First Amendment protects both the filing of an EEOC charge and a civil rights lawsuit.  *Tyler v. Univ. of Ark. Bd. of Trustees*, 628 F.3d 980, 986 (8th Cir. 2011).  Section 1983 "provides a vehicle for redressing claims of retaliation on the basis of the First Amendment." *Id.* "Such claims are analyzed under a burden shifting framework which requires [Ms. Nelson] to

establish a *prima facie* case of retaliation by showing that (1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) a causal connection exists between the two." *Butler v. Crittenden Cnty., Ark.*, 708 F.3d 1044, 1050−51 (8th Cir. 2013).

Accepting her allegations as true, as the Court is required to do at this stage of the proceedings, Ms. Nelson's amended complaint contains enough factual information to provide the grounds on which her First Amendment retaliation claims rest.  Therefore, the motion to dismiss Ms. Nelson's First Amendment retaliation claims under § 1983 is denied.  To the extent that Ms. Nelson attempted to bring any other claim pursuant to the First Amendment, the Court agrees with defendants that she failed to state such a claim.

## F.      Failure To State A Discrimination Claim

The final argument the ADC and Warden Banks make in their motion to dismiss is that Ms. Nelson failed to include sufficient detail in her complaint to state a plausible claim for employment discrimination (Dkt. No. 7, at 12-15).   They made this argument against the complaint filed in Ms. Nelson's original action, which the Court rejected.  *See* Opinion and Order, *Nelson v. Banks*, Case No. 5:12-cv-00292 (E.D. AR July 27, 2012) (Dkt. No. 11).  For the reasons previously stated in its Opinion and Order from the original action, the Court finds that Ms. Nelson's complaint contains a plausible claim for discrimination.

## V.      Motion To Dismiss As To Helen Edwards

The ADC and Warden Banks offer four reasons for why Ms. Edwards's claims should be dismissed:  (1) her claims have already been dismissed with prejudice; (2) her complaint fails to satisfy the requirements of Federal Rule of Civil Procedure 8; (3) she fails to state a claim that the defendants violated the AWBA; and (4) her claims against Warden Banks in his official

capacity are barred by qualified immunity.  The standard of review for the motion to dismiss Ms. Edwards's claims is the same as set forth *supra* in Section IV.A of this Opinion and Order.

### A.      The Dismissal Of Ms. Edwards's Original Action

The ADC and Warden Banks first argue that the dismissal of Ms. Edwards's original action in state court bars relitigation of her claims.  In her original action, Ms. Edwards sued the ADC, Warden Banks, and the VUEC.  The Circuit Court of Jefferson County, Arkansas, dismissed all of Ms. Edwards's claims.  The court dismissed her claims against the ADC and Warden Banks without prejudice.  According to the state court order, Ms. Edwards previously brought suit against the VUEC and voluntarily dismissed that action.  Therefore, the court dismissed her claims against the VUEC with prejudice (Dkt. No 12-2, at 3).

The ADC and Warden Banks argue that the dismissal of VUEC with prejudice "effectively bars re-litigation of Edwards' claims (against any defendant) because it strips away the foundation of Edwards' entire lawsuit" (Dkt. No. 13, at 6).  According to the ADC and Warden Banks, Ms. Edwards's "entire claim is built on the notion that she was not paid by VUEC" (Dkt. No. 13, at 5).  Defendants contend that her minimum wage claim is based on the allegation that she worked for both the ADC and the VUEC and was not fully compensated for her work in violation of state and federal minimum wage laws.  They assert that her whistle blower claim is based on the allegation that she was fired after reporting this alleged violation of the law.  The ADC and Warden Banks believe that the state court's order, which found that "VUEC never existed in the capacity that Plaintiff's claims require," should be treated as "the law of the case," barring relitigation of these issues (Dkt. No. 13, at 5).  Accordingly, the ADC and Warden Banks maintain that Ms. Edwards cannot state a minimum wage claim because she cannot argue that she was entitled to wages from VUEC.  Similarly, they contend that she cannot

argue a violation of the whistle blower law because there was "no violation of the law" that she reported.

The Court finds that Ms. Edwards's minimum wage claims under state and federal law are barred by collateral estoppel, which may be raised *sua sponte*. *Johnson v. LaSalle Bank Nat. Ass'n*, 663 F. Supp. 2d 747, 765 (D. Minn. 2009). "Collateral estoppel precludes the relitigation of an issue in federal court that has been decided by a state court." *Harben v. Dillard*, No. 4:09CV00395 BSM, 2010 WL 3893980, at *3 (E.D. Ark. Sept. 30, 2010). In its order, the state court found that Ms. Edwards failed to plead facts sufficient to support a minimum wage claim under state and federal law because:

> (1) the ADC and the VUES are not "joint employers" and any services rendered by Edwards for the VUES was voluntary; (2) Edwards had no employment relationship with the VUEC and, even if she did, Edwards has not pled any facts or cited any authority for her claim that services rendered by her to the VUEC entitled her to any additional compensation from the ADC; and (3) Edwards has failed to plead facts to establish the threshold requirements for coverage under the FLSA.

(Dkt. No. 12-2, at 2). These factual findings served as the state court's basis for dismissing with prejudice Ms. Edwards's claims against the VUEC. Ms. Edwards never appealed the state court's decision.

In this action, Ms. Edwards alleges violations of both federal and state minimum wage law. The analysis for collateral estoppel under federal law and Arkansas law is predominantly identical. *Compare Irving v. Dormire*, 586 F.3d 645, 648 (8th Cir. 2009) (providing the four elements of federal collateral estoppel), *with Riverdale Dev. Co. v. Ruffin Bldg. Sys., Inc.,* 146 S.W.3d 852, 855 (Ark. 2004) (providing the four elements of federal collateral estoppel). The Court finds that under both federal and state law, Ms. Edwards should be estopped from arguing that the ADC and Warden Banks are liable for damages for failing to compensate her for her

work at the VUEC.  The Court dismisses with prejudice her claims under the AMWA, Ark. Code Ann. §§ 11-4-201, *et seq.*, and the FLSA, 29 U.S.C. §§ 201, *et seq.*

Ms. Edwards's whistleblower claim is not barred by the state court's dismissal with prejudice of the VUEC.  The ADC and Warden Banks argue that Ms. Edwards's minimum wage allegations were the foundation of her whistleblower claim and contend that "[w]ithout VUEC, there is no valid whistleblower allegation as a matter of law, because there was never any 'violation of law' for Edwards to identify and expose" (Dkt. No. 13, at 6).  The ADC and Warden Banks correctly note that, in Count 1 of the Amended Complaint, Ms. Edwards identifies the alleged violation of minimum wage law as the "violation of law" for the purposes of her AWBA claim (Dkt. No. 4, at ¶ 3).  However, this is not the only alleged violation of law that Ms. Edwards purportedly reported to a superior.  Ms. Edwards claims that Warden Banks directed the VUEC's CEO to make a loan in violation of the VUEC's policies.  Ms. Edwards alleges that she believed, in good faith, that this was theft, and she maintains that she was fired after she reported this apparent violation of law to Warden Banks and ADC management (Dkt. No. 4, at ¶ 27-28).  Therefore, Ms. Edwards has stated a claim under the AWBA that does not rely upon her minimum wage claims, and the state court's dismissal with prejudice of the VUEC does not mandate dismissal of her whistleblower claim.[6]

---

[6] Ms. Edwards's AWBA claims may be barred by the Eleventh Amendment.  *See Crosby v. Pulaski Tech. Coll. Bd. of Trustees,* No. 4:06CV01003SWW, 2007 WL 2750672, at *5 (E.D. Ark. Sept. 18, 2007) ("Although the Arkansas Whistle-Blower Act provides for citizen suits in state court against a 'public employer,' *see* Ark.Code Ann. § 21-1-604, the State's general waiver of sovereign immunity is insufficient to waive Eleventh Amendment immunity. A state must specify an intent to subject itself to federal court jurisdiction in order to waive Eleventh Amendment immunity, *see Faibisch v. University of Minnesota,* 304 F.3d 797, 800 (8th Cir. 2002), and after careful review, the Court finds no such provision with respect to the Arkansas Whistle-Blower Act.").  The Court makes no determination on this issue at this time for two reasons.  First, it was not raised by the parties in their filings.  Second, the analysis may be

**B.      Sufficiency Of Pleading Under Federal Rule Of Civil Procedure 8**

The ADC and Warden Banks next argue that Ms. Edwards's amended complaint fails to state facts upon which any relief may be granted.  As Ms. Edwards's minimum wage claims are dismissed on a separate basis, the Court will only determine if she has sufficiently plead a claim under the AWBA and for racial and gender discrimination.

Federal Rule of Civil Procedure 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Specific facts are not required; the complaint simply must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555).  However, the complaint must include enough factual information to "provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level."  *Twombly*, 550 U.S. at 555-56; *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008).

The AWBA creates a civil cause of action for public employees who are subjected to an adverse action after they "blow the whistle" on an apparent misuse of public resources or violation of the law.  Ark. Code Ann. §§ 21-1-601, *et seq*.  Ms. Edwards alleges that Warden Banks directed the VUEC's CEO to make a loan without member approval, in violation of the VUEC's policies.  She alleges that "[t]his was theft" or at least that "she believed, in good faith, [that] this was theft" (Dkt. No. 4, at ¶ 27-28).  She contends that she complained about this action to Warden Banks and ADC management and that she was fired shortly thereafter.  Regarding her

---

impacted by the procedural history of this case.  *See Lapides*, 535 U.S. at 624 (finding that the state waived its Eleventh Amendment immunity by removing a case from state court, where the state was not able to claim sovereign immunity as a defense in state court).  The Court will wait to receive further briefing from the parties before addressing this issue.

claims of racial and gender discrimination, Ms. Edwards alleges that she was fired for certain infractions while "other white males had done far worse," but were allowed to keep their jobs (Dkt. No. 4, at ¶ 31).  She claims this treatment violated her rights under the state and federal constitutions, as well as the ACRA (Dkt. No. 4, at ¶ 52-53).

Accepting her allegations as true, as the Court is required to do at this stage of the proceedings, Ms. Edwards's complaint contains enough factual information to provide the grounds on which her whistle blower and discrimination claims rest.  Specific facts are not required, and Ms. Nelson has provided defendants with fair notice of her AWBA and discrimination claims.  Therefore, the ADC and Warden Banks's motion to dismiss Ms. Nelson's AWBA and discrimination claims pursuant to Rule 8 of the Federal Rules of Civil Procedure is denied.

## C.      Failure To State A Claim Under The AWBA

The ADC and Warden Banks next argue that Ms. Edwards failed to state a claim for relief under the AWBA, which provides that:

> A public employer shall not take adverse action against a public employee because the public employee or a person authorized to act on behalf of the public employee communicates in good faith to an appropriate authority:
>
> > (A) The existence of waste of public funds, property, or manpower, including federal funds, property, or manpower administered or controlled by a public employer; or
> >
> > (B) A violation or suspected violation of a law, rule, or regulation adopted under the law of this state or a political subdivision of the state.

Ark. Code Ann. § 21-1-603(a)(1).  Under the AWBA, "a public employee who reports violations of law or waste of public funds to the appropriate authorities is afforded protection under the Act."  *Barrows v. City of Fort Smith*, 360 S.W.3d 117, 124 (Ark. 2010).  The ADC and Warden Banks contend that Ms. Edwards' claims under the AWBA are based on her assertion that she

blew the whistle on the alleged misuse of funds held by the VUEC.  They argue that her complaint does not implicate the AWBA because the funds at issue were not public funds (Dkt. No. 13, at 9).  They also argue that Ms. Edwards failed to plead facts to support a claim that this alleged misuse of money was a "violation of law" for the purposes of the AWBA because an improper loan cannot constitute "theft" as defined by a separate Arkansas statute (Dkt. No. 13, at 10-11).  In reply, Ms. Edwards argues that she plead sufficient facts to support a claim under the AWBA because she, in good faith, reported a suspected violation of the law and that the AWBA "does not require that an employee prove a violation of the law, only a good faith suspicion" (Dkt. No. 22, at 2).

The Court finds that Ms. Edwards stated a claim under the AWBA.  The statute provides that a public employee is protected when the employee, in good faith, communicates a *suspected* violation of the law to an appropriate authority.  *See* Ark. Code Ann. § 21-1-603(a)(1)(B).  An actual violation of the law is not required by the statute, so long as the employee acted in good faith.  The record before the Court does not indicate that Ms. Edwards was not acting in good faith by reporting the alleged misuse of VUEC funds.  Therefore, the Court finds that Ms. Edwards stated a claim for relief under the AWBA.

### D.    Qualified Immunity

Warden Banks moves to dismiss Ms. Edwards's racial and gender discrimination claims against him in his individual capacity on the basis of qualified immunity. In her complaint, Ms. Edwards claims that Warden Banks's decision to terminate her was discriminatory.  For the same reasons stated in Section IV.D of this Opinion and Order, Warden Banks is not entitled to qualified immunity at this stage of the proceeding.  Therefore, the Court denies Warden Banks's motion to dismiss Ms. Edwards's racial and gender discrimination claims.

VI.     **Motion To Strike**

The ADC and Warden Banks also ask that this Court strike a portion of paragraph 10 in both the complaint and amended complaint, as well as a portion of paragraph 31 of the amendment complaint.  Specifically, the ADC and Warden Banks request that the Court strike the following passages:  "Upon information and belief, Banks is a known racist that regularly uses racial slurs.  He also has had a practice of battering women" (Dkt No. 2, at ¶ 10; Dkt. No. 4, at ¶ 10); and "[Warden Banks] routinely he [sic] uses racial and gender slurs to describe women and blacks" (Dkt. No. 4, at ¶ 31).  The ADC and Warden Banks claim that these passages are improper under Federal Rule of Civil Procedure 12(f) and should by struck from the complaint and amended complaint.  They argue that the allegations are scandalous, unsupported by evidence, and "only serve to harass, insult, and besmirch Warden Banks' good name" (Dkt. No. 16, at 5).  They also claim that the allegation regarding violence against women "takes it a step further" as it is an allegation of "criminal conduct without any evidentiary basis" that is "wholly irrelevant to Plaintiffs' present allegation of employment discrimination" (Dkt. No. 16, at 3).

Ms. Nelson and Ms. Edwards respond by arguing that their allegations of Warden Banks' use of racial slurs should not be stuck at this stage of the litigation and that the allegations about his use of discriminatory language should not be stuck because "such statements can be evidence of illegal animus" (Dkt No. 20, at 6; Dkt. No. 21, at 16).  Ms. Nelson and Ms. Edwards do not address the motion to strike their allegation that Warden Banks batters women.

Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter."  An allegation contained in a pleading is immaterial if it "has no essential or important relationship to the claim for relief or the defenses being pleaded." *CitiMortgage, Inc. v. Just Mortgage, Inc.*, No. 4:09 CV 1909 DDN,

2013 WL 6538680, at *7 (E.D. Mo. Dec. 13, 2013) (internal quotations omitted).  An allegation is impertinent if it "consists of statements that do not pertain, and are not necessary, to the issues in question."  *Id.*  An allegation is scandalous if it "improperly casts a derogatory light on someone, most typically on a party to the action." 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1382 (3d ed. 2015).  However, "[i]t is not enough that the matter offends the sensibilities of the objecting party if the challenged allegations describe acts or events that are relevant to the action."  *Id.*  While Rule 12(f) is understood to provide courts with "liberal discretion," the Eighth Circuit Court of Appeals has stated that "striking a party's pleadings is an extreme measure, and, as a result, we have previously held that '[m]otions to strike under Fed .R.Civ.P. 12(f) are viewed with disfavor and are infrequently granted.'" *Stanbury Law Firm v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir. 2000) (quoting *Lunsford v. United States,* 570 F.2d 221, 229 (8th Cir.1977)).

This is an employment discrimination case.  Ms. Nelson and Ms. Edwards claim that Warden Banks discriminated against them because of their race and gender.  Therefore, allegations regarding his attitude towards racial minorities and his use of racial and gender slurs are material and pertinent to this case.  The motion to strike these allegations is denied.

However, it is appropriate to strike the allegation contained in the complaint and amended complaint that Warden Banks has a practice of battering women (Dkt No. 2, at ¶ 10; Dkt. No. 4, at ¶ 10).  "[A]llegations may be stricken if they have no real bearing on the case, will likely prejudice the movant, or where they have criminal overtones." *Jameson v. State Farm Mut. Auto. Ins. Co.*, 871 F. Supp. 2d 862, 873 (W.D. Mo. 2012).  Ms. Nelson and Ms. Edwards do not claim that Warden Banks physically assaulted them in any way and are not seeking to recover any damages for any physical abuse against women.  As a result, this allegation is

irrelevant to this case and scandalous, as it improperly casts a derogatory light on Warden Banks. When confronted with these arguments in the motion, neither Ms. Nelson nor Ms. Edwards defended their use of this language in the complaint or amended complaint. Accordingly, the Court grants the motion to strike the allegation that "[h]e also has had a practice of battering women" from paragraph 10 of the complaint and amended complaint (Dkt No. 2, at ¶ 10; Dkt. No. 4, at ¶ 10).

### VII.   Conclusion

For the foregoing reasons, it is ordered that:

1.    Ms. Nelson and Ms. Edwards's motion for partial summary judgment is denied (Dkt. No. 5).

2.    The ADC and Warden Banks's motion to dismiss Ms. Nelson's claims is granted in part and denied in part. The Court grants the motion to dismiss Ms. Nelson's claims under the ACRA as untimely. The Court grants defendants' motion to dismiss Ms. Nelson's claims against the ADC and Warden Banks in his official capacity. The Court denies the defendants' motion to dismiss Ms. Nelson's gender and race discrimination claims on the basis of qualified immunity. The Court denies the ADC and Warden Banks's motion to dismiss Ms. Nelson's First Amendment retaliation claim. The Court denies the ADC and Warden Banks's motion to dismiss Ms. Nelson's discrimination claims for failing to state a cognizable claim for relief.

3.    The ADC and Warden Banks's motion to dismiss Ms. Edwards's claims is granted in part and denied in part. The Court grants defendants' motion to dismiss with prejudice Ms. Edwards's claims under the AMWA, Ark. Code Ann. §§ 11-4-201, *et seq.*, and the FLSA, 29 U.S.C. §§ 201, *et seq*. The Court denies defendants' motion to dismiss Ms. Edwards's racial and gender discrimination claims, as well as her claim under the AWBA, Ark. Code Ann.

§§ 21-1-601, *et seq*.  The Court denies the defendants' motion to dismiss Ms. Edwards's gender and race discrimination claims on the basis of qualified immunity.

    4.    The ADC and Warden Banks's motion to strike is granted in part and denied in part.  The Court denies the motion to strike allegations regarding Warden Banks's use of racial slurs and attitude towards racial minorities.  The Court grants the motion to strike the allegation of violence against women in paragraph 10 of the complaint and amended complaint (Dkt No. 2, at ¶ 10; Dkt. No. 4, at ¶ 10).

5.    The "alternative" motion to remand contained in Ms. Nelson's response to defendants' motion to dismiss and motion to strike is denied (Dkt. No. 20).

    Dated this 28th day of September, 2016.

Kristine G. Baker
United States District Judge