# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### WESTERN DIVISION

TANZA NELSON                                                                            PLAINTIFF

v.                              Case No. 4:15-cv-00605 KGB

JIMMY BANKS, in his official capacity
as Warden of the Varner Unit and in his
individual capacity, and the
ARKANSAS DEPARTMENT OF CORRECTION                                      DEFENDANTS

## OPINION AND ORDER

Plaintiff Tanza Nelson brings this action under 42 U.S.C. § 1983 alleging gender discrimination and retaliation in violation of the First Amendment.[1]  Defendants Warden Jimmy Banks, who is sued in both his official and individual capacities (Dkt. No. 4, ¶ 1), and the Arkansas Department of Correction ("ADC") have filed a motion for summary judgment, seeking judgment in their favor on Ms. Nelson's claims (Dkt. No. 46).  Ms. Nelson has responded in opposition. Warden Banks and the ADC have replied.  For the reasons that follow, the Court grants Warden Banks and the ADC's motion for summary judgment and enters judgment in favor of Warden Banks and the ADC on Ms. Nelson's gender discrimination and retaliation claims.

### I.        Factual Background

Unless otherwise noted, the following facts are taken from Warden Banks and the ADC's statement of undisputed material facts (Dkt. No. 48), Ms. Nelson's response to defendants' statement of undisputed material facts (Dkt. No. 53), and Warden Banks and the ADC's reply in support of statement of undisputed material facts (Dkt. No. 56).

---

[1]  The Court notes that Ms. Nelson has conceded her race discrimination claim (Dkt. No. 54, at 3, n.1).  Warden Banks and the ADC are entitled to judgment as a matter of law on Ms. Nelson's race discrimination claim.

The ADC hired Ms. Nelson as a correctional officer at the Varner Unit in September 1997 (Dkt. No. 48, ¶ 1). Ms. Nelson never worked at any other unit (*Id*.). The ADC promoted Ms. Nelson to sergeant in approximately 2005 (*Id.*, ¶ 2). In 2010, Ms. Nelson applied for and was promoted to the position of lieutenant (*Id.*, ¶ 3). Ms. Nelson knew in 2010, when she applied for the promotion, that she would not have any grievance rights as a lieutenant if disciplined (*Id*., ¶ 4).

Ms. Nelson began as a utility lieutenant and, after a few months, rotated to shift supervisor for the day shift (*Id*., ¶ 5). As shift supervisor, Ms. Nelson's chain of command included Captain John Spears, Major Jared Byers, Deputy Warden Curtis Meinzer, and Warden Jimmy Banks (Dkt. No. 48, ¶ 6). As a shift supervisor, Ms. Nelson was responsible for approximately four sergeants and 15 to 20 correctional officers (*Id*., ¶ 7). The sergeants were responsible for assigned areas of the unit, and the correctional officers had daily rotating posts (*Id*., ¶ 8). In her training, which continued throughout the course of her employment with the ADC, Ms. Nelson learned policy and procedure, including how to manage mass movement of inmates (*Id*., ¶ 9).

In October 2010, Ms. Nelson signed Administrative Directive 10-19 with the understanding that she was expected to abide by the standards set forth in the document (*Id*., ¶ 10). As part of her duties, Ms. Nelson was responsible for supervising the correctional officers and sergeants, providing instruction to staff, performing security checks, preparing reports on inmate disturbances, and counseling inmates (*Id*, ¶ 11). Ms. Nelson understood that, if inmates got into a fight, she was to separate them, take them to the infirmary, take them to the max unit, and prepare and gather documentation immediately following the incident (Dkt. No. 48, ¶ 12). Documentation included a disciplinary report, the infirmary reports, and statements from everyone involved (*Id*., ¶ 13). If Ms. Nelson suspected that a fight occurred, she was to conduct an investigation, including questioning the staff and inmates involved (*Id*., ¶ 14).

Warden Banks and the ADC allege that Ms. Nelson's job performance was unsatisfactory on multiple occasions. On April 27, 2011, Records Supervisor Nancy Straughn emailed Deputy Warden James Gibson complaining of Ms. Nelson's attitude during a conversation related to an inmate pickup order (*Id.*, ¶ 15). Ms. Nelson denies having had a conversation with Ms. Straughn about an inmate pickup order on April 27, 2011 (Dkt. No. 53, ¶ 15). Ms. Nelson admits to having had a conversation with Ms. Straughn involving signing a clearance sheet that led to a later disciplinary incident with Captain Spears (Dkt. No. 46, Ex. A, Nelson Dep., at 68; 72; Dkt. No. 55, Ex. A Supp., at 69-70). Warden Banks and the ADC allege that, on two separate occasions, a sergeant under Ms. Nelson's command was observed out of her assigned area (Dkt. No. 48, ¶ 16). Ms. Nelson contends that the sergeant in question was out of her area out of necessity and was at the copy machine and computer entering paperwork as part of her daily job duties (Dkt. No. 53, ¶ 16).

Warden Banks and the ADC allege that, in May 2011, hallways under Ms. Nelson's supervision became congested with inmates (Dkt. No. 48, ¶ 16). Ms. Nelson contends that this was a single incident, that Major Byers observed the incident, and that he reassigned Ms. Nelson's staff to ensure the flow of traffic in the hallways (Dkt. No. 53, ¶¶ 16; 17). Warden Banks and the ADC allege that Major Byers personally observed the hallway congestion incidents in question in May 2011 (Dkt. No. 48, ¶ 17).

On May 9, 2011, Major Byers served Ms. Nelson an employee conduct review related to zone management and hallway congestion, amounting to a written warning carrying with it six months' probation (*Id.*, ¶ 20). Major Byers called Ms. Nelson into Deputy Warden Meinzer's office to give her the written warning (Dkt. No. 53, ¶ 21). All parties agree that Ms. Nelson read the warning and giggled (*Id.*, ¶ 22), although she contends that she laughed because she felt that

she should not be receiving a disciplinary action for the incident (*Id.*). All parties also agree that Deputy Warden Meizner told Ms. Nelson "don't laugh when you're being served a disciplinary action because this is a very serious issue, and you really need to take this serious." *(Id.,* ¶ 23). Four days later, after receiving the written warning, Ms. Nelson sent an appeal letter to Warden Banks (Dkt. No. 53, ¶ 24). The parties dispute whether Ms. Nelson had any appeal rights as to the written warning issued by Major Byers (Dkt. Nos. 48, ¶ 24; 53, ¶ 24). All parties agree that the appeal letter did not complain of any discriminatory conduct (*Id.*, ¶ 25).

All parties agree that Major Byers is a supervisor in Ms. Nelson's chain of command and had the authority to issue disciplinary actions to Ms. Nelson (Dkt. No. 48, ¶ 19). The parties agree that Major Byers discussed in a previous security meeting the importance of enforcing the zone management policy and maintaining order in the hallways (*Id.*, ¶ 18). However, Ms. Nelson alleges that, despite her request, Major Byers never provided in writing the zone management instruction (Dkt. No. 53, ¶ 18).

On June 7, 2011, Ms. Nelson met with her immediate supervisor, Captain Spears (Dkt. No. 48, ¶ 26). The parties dispute the content of that meeting, (Dkt. No. 53, ¶ 26), but both parties agree that Captain Spears and Ms. Nelson discussed an encounter between Ms. Nelson and Ms. Straughn regarding Ms. Nelson's signature on a clearance sheet (Dkt. No. 46, Ex. A, Nelson Dep., at 68; Dkt. No. 55, Ex. A Supp, Nelson Dep. at 69-70). Both Captain Spears and Ms. Nelson yelled during the meeting (Dkt. No. 55, Ex. A Supp, Nelson Dep., at 87). Also on June 7, 2011, Ms. Nelson told Captain Spears that he and the others in the chain of command were just mad because she was a strong woman (Dkt. No. 48, ¶ 28).

On June 8, 2011, Ms. Nelson wrote a letter to Deputy Director Larry Mays alleging complaints of gender discrimination (*Id.*, ¶ 29). The letter stated: "I, Tanza Nelson, am filing a

formal complaint of gender discrimination on the following, Major Byers and Captain Spears" (*Id.*). The letter's allegations did not include Warden Banks (*Id.*).

On June 21, 2011, Ms. Nelson met with Warden Banks and Deputy Warden Gibson to discuss the prior disciplinary incidents and the appeal from Major Byers' letter (Dkt. Nos. 53, ¶ 30; 40, ¶ 17). All parties agree that Warden Banks suggested demoting Ms. Nelson at that meeting (*Id.*). Ms. Nelson was placed on administrative leave (Dkt. Nos. 53, ¶ 30; 40, ¶ 18).

On June 24, 2011, Captain Spears sent an "Inter-Office Communication" to Warden Banks informing him of the June 7, 2011, meeting in his office with Ms. Nelson (Dkt. Nos. 48, ¶ 30; 53 ¶ 30). On June 29, 2011, Ms. Nelson met with Warden Banks and Deputy Warden Meinzer (Dkt. No. 48, ¶ 31). Warden Banks suspended Ms. Nelson without pay for seven days (*Id.*, ¶ 32). Warden Banks and the ADC allege that the reason for Ms. Nelson's suspension was her conduct during the June 7, 2011, meeting with Captain Spears (*Id.*). Ms. Nelson alleges that the reason for her suspension was the June 24, 2011, memo (Dkt. No. 53, ¶ 32). Ms. Nelson alleges that the suspension was improper because the June 24, 2011, memo was not a disciplinary form (*Id.*). Ms. Nelson returned to work on July 10, 2011 (Dkt. Nos. 4, ¶ 19; 40, ¶ 19).

In a unit security meeting on July 26, 2011, Deputy Warden Gibson asked Ms. Nelson to meet with him after the meeting concluded (Dkt. No. 53, ¶ 33; Dkt. No. 56, ¶ 33). Ms. Nelson shrugged her shoulders, sighed, and rolled her eyes at Deputy Warden Gibson (Dkt. No. 53, ¶ 34; Dkt. No. 56, ¶ 34).[2]

---

[2] Ms. Nelson denies this allegation with no cite to record evidence, but the record evidence presented by Warden Banks and the ADC demonstrate that she admitted this fact under oath (Dkt. No. 56, ¶ 34). Local Rule 56.1(b) of the United States District Court for the Eastern and Western Districts of Arkansas requires a non-moving party to supply the Court with a statement of material facts "as to which it contends a genuine issue exists to be tried." *See Jackson v. United Parcel Serv., Inc.*, 643 F.3d 1081, 1088 (8th Cir. 2011). Federal Rule of Civil Procedure 56(e) states that, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's

On July 28, 2011, Ms. Nelson responded to a phone call from an officer informing her of an incident between two inmates, Mr. Bush and Mr. McGhee (Dkt. No. 48, ¶ 36). Ms. Nelson denies that the officer informed her that the two inmates were trying to fight (Dkt. No. 53, ¶¶ 36, 37). Ms. Nelson was aware that Mr. McGhee received services from the mental health office (Dkt. No. 48, ¶ 38). Ms. Nelson ordered Mr. McGhee to come to the barrack doors several times, and he ignored her orders (Dkt. No. 53, ¶ 39). Ms. Nelson took inmate Mr. Bush out for questioning (Dkt. No. 48, ¶ 40). Mr. Bush told Ms. Nelson that Mr. McGhee had taken a swing at him and requested that Mr. McGhee be moved out of the barracks (*Id.*, ¶ 41; Dkt. No. 56, ¶ 41).[3] Ms. Nelson contends that Mr. Bush explained the situation and said that he felt safe remaining in the barracks (Dkt. No. 53, ¶ 61). Ms. Nelson sent Mr. Bush back into the barracks and told him that she would return to check on them once she completed hoe squad turn-in (Dkt. Nos. 48, ¶ 42; 53, ¶ 42). Before completing hoe squad turn-in, Ms. Nelson received a call that Mr. Bush and Mr. McGhee had a fight (*Id.*, ¶ 43). When she arrived, field riders had responded to the situation and had both inmates in handcuffs (*Id.*, ¶ 44).

Policy required Ms. Nelson to perform at a level commensurate with the job specifications, performance standards, and other duties assigned (*Id.*, ¶ 45). Potential discipline for unsatisfactory

---

assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it; or (4) issue any other appropriate order." The Court deems this fact admitted based on the record evidence.

[3] Ms. Nelson denies this allegation with no cite to record evidence, but the record evidence presented by Warden Banks and the ADC confirms that she admitted under oath that Mr. Bush advised her Mr. McGhee "was swinging on anybody that walks by his bed. . ." and that Mr. McGhee "just needs to be moved out [of the barracks] because, you know, you know he a mental health patient. . . ." (Dkt. No. 56, ¶ 41). Relying on the same principles cited in Note 2, above, the Court deems this fact admitted based on the record evidence.

work performance resulting in injury includes discharge (*Id.*, ¶ 46). Policy further required Ms. Nelson to come to the "assistance of [a]. . . person in any situation, including. . . aiding someone who is being assaulted." (*Id.*, ¶ 47). Potential discipline for a failure to respond or assist in situations resulting in or with the likelihood to result in physical injury includes discharge (*Id.*, ¶ 48). Ms. Nelson admits that policy required her to perform or carry out work related instruction, when such instructions were reasonable and within the employee's ability to perform and would not pose a safety or welfare hazard to the employee, but contends that the policy also required her not to place herself in danger (Dkt. No. 53, ¶ 49). She contends that, had she entered the barracks alone, she would have been in violation of policy (*Id.*).

On August 29, 2011, Ms. Nelson met with Warden Banks and Sherry Conrad, Unit Human Resources Manager, to discuss her termination (Dkt. No. 46, Ex. L, at 1). The parties agree that Ms. Nelson did not complain at that meeting about discrimination or allege that the termination was in retaliation for filing an Equal Employment Opportunity Commission ("EEOC") charge (Dkt. Nos. 48, ¶ 62; 53, ¶ 62). Ms. Nelson contends that she "assumed that everyone knew I had filed an EEOC charge because I did it in July, over a month before my termination meeting" (Dkt. No. 53, ¶ 62). It is unclear from the record if Ms. Nelson filed an EEOC charge in July 2011. Ms. Nelson admits to filing two EEOC charges in her response to defendants' statement of undisputed material facts: the first on August 10, 2011, claiming discipline on account of race and gender between May 14, 2011, and June 29, 2011, and the second on October 13, 2011, alleging gender discrimination and retaliation purportedly occurring between August 15, 2011, and September 2, 2011 (Dkt. No. 53, ¶¶ 65-67).

Warden Banks contends that he was unaware of Ms. Nelson filing EEOC charges until after her termination (Dkt. No. 48, ¶ 63). Ms. Nelson disputes this. She alleges that Captain

Lassandra Malone contacted her when she returned from suspension and informed Ms. Nelson that the administration, including Mr. Banks, informed Captain Malone that Ms. Nelson had filed a discrimination lawsuit and that the administration was mad at Ms. Nelson (Dkt. No. 53, ¶ 63). Ms. Nelson alleges that Captain Spears told her the same thing (*Id.*). It is unclear to the Court to which lawsuit Ms. Nelson refers.

Ms. Nelson was terminated on September 2, 2011 (Dkt. Nos. 4, ¶ 25; 40, ¶ 25). Her termination letter cites policy violations and states that she was terminated "based on the seriousness of the incidents as identified and the principles of progressive discipline" (Dkt. Nos. 48, ¶ 50; 53, ¶ 50). Ms. Nelson contends that she was terminated under circumstances in which similarly situated white males were not (Dkt. No. 4, ¶ 3). Warden Banks and the ADC deny this allegation (Dkt. No. 40, ¶ 3).

The parties agree that another lieutenant, Douglas Boultinghouse, was involuntarily demoted and promoted multiple times over the course of his employment at ADC (Dkt. No. 53, ¶ 54). The parties agree that another employee, Thomas Rowland, resigned in lieu of termination and was rehired to a different position in the ADC (*Id.*, ¶ 55). The parties agree that a third employee, Rodney Jones, also resigned in lieu of termination (*Id.*, ¶ 56). The parties dispute whether Warden Banks was involved as a decision maker in those determinations, although Ms. Nelson presents no record evidence to demonstrate that he was a decision maker in those determinations (*Id.*, ¶¶ 59; 60). Ms. Nelson contends that she was never given the option of resigning and only knows of men being given that option (*Id.*, ¶¶ 55; 56).

The parties agree that Mr. Banks served as the Warden of the Varner Unit for the ADC from March 2010 to January 2013 (*Id.*, ¶ 58). Ms. Nelson alleges that she has heard rumors and observed actions that lead her to believe that Warden Banks is a racist (Dkt. No. 53, ¶ 57).

Defendants allege that Ms. Nelson did not complain to Warden Banks of race or gender discrimination at any time until after her termination (Dkt. No. 48, ¶ 61). Ms. Nelson contends that she did complain to Warden Banks in August 2011 that Captain Spears was a male who had been treated more favorably (Dkt. No. 53, ¶ 61).

Ms. Nelson originally filed suit on January 27, 2012. *See* Complaint, *Nelson v. Banks*, Case No. 5:12-cv-00292 (E.D. AR July 27, 2012) (Dkt. No. 1). Her case was voluntarily dismissed on June 9, 2014. *See* Order, *Nelson v. Banks*, Case No. 5:12-cv-00292 (E.D. AR June 9, 2014) (Dkt. No. 20). She filed her present action in the Circuit Court of Pulaski County, Arkansas, on June 8, 2015 (Dkt. No. 7, at 4). Warden Banks and the ADC removed the case to this Court on September 29, 2015 (Dkt. No. 1, at 1). This Court dismissed several of Ms. Nelson's claims by prior order (Dkt. No. 38). Defendants request summary judgment in their favor on Ms. Nelson's remaining claims (Dkt. No. 46).

## II. Standard of Review

Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact in dispute and that the defendant is entitled to entry of judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party. *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989). However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984). The initial burden is on the moving party to demonstrate the absence of a genuine

issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 2008). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

"There is no 'discrimination case exception' to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc). Accordingly, this Court applies the same summary judgment standard to discrimination cases as it does to all others.

### III. Analysis

#### A. Sovereign Immunity

As a preliminary matter, Warden Banks and the ADC raise sovereign immunity as a defense to Ms. Nelson's § 1983 claims. They ask the Court to dismiss the ADC as a party to Ms. Nelson's suit because the ADC is not a "person" subject to suit under § 1983. In her response to defendant's motion for summary judgment, Ms. Nelson agrees that the ADC is not a person for purposes of § 1983, but she seeks *Ex Parte Young* relief (Dkt. No. 52, at 1).[4]

A "person" under § 1983 does not include a state, a state agency, or a state official sued in his official capacity for damages. *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989). In *Ex Parte Young*, the Supreme Court held that Eleventh Amendment immunity was not available to state officials in suits seeking prospective injunctive relief for violations of federal

---

[4] Although Ms. Nelson cites the doctrine, she offers no rationale as to why *Ex Parte Young* relief applies in this case.

10

law.  *Ex Parte Young*, 209 U.S. 123, 155-56 (1908).  The *Ex parte Young* doctrine, however, only creates an exception to Eleventh Amendment immunity for state officials sued in their official capacities for prospective relief; it does not create any exception to Eleventh Amendment immunity for claims for prospective relief against the state or state agencies.  *See Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985) ("Unless a State has waived its Eleventh Amendment immunity or Congress has overridden it, however, a State cannot be sued directly in its own name regardless of the relief sought."); *Monroe v. Arkansas State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007) ("While under the doctrine set forth in *Ex Parte Young* state officials may be sued in their official capacities for prospective injunctive relief without violating the Eleventh Amendment, the same doctrine does not extend to states or state agencies." (internal citations omitted)).  *Ex Parte Young* relief is not available to Ms. Nelson on her claims as to the ADC.

As to whether the *Ex Parte Young* exception applies to Warden Banks in his official capacity, the Court conducts a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.  *281 Care Committee v. Arneson,* 638 F.3d 621, 632 (8th Cir. 2011).  In her amended complaint, Ms. Nelson requested reinstatement or front pay.  Reinstatement to previous employment is a form of equitable, prospective relief.  *See Treleven v. Univ. of Minn.,* 73 F.3d 816, 819 (8th Cir. 1996); *see generally State Emps. Bargaining Agent Coal. v. Rowland,* 494 F.3d 71, 96-98 (2d Cir. 2007) (collecting cases).  By prior Order, this Court dismissed Ms. Nelson's claims for damages against the ADC and Warden Banks in his official capacity as barred by sovereign immunity (Dkt. No. 38).  The Court allowed Ms. Nelson's claims to go forward in so far as those claims seek reinstatement as an equitable remedy against the ADC and Warden Banks in his official capacity

(*Id*.).  The Court hereby dismisses the ADC as a named party but will permit Ms. Nelson to seek *Ex Parte Young* relief in the form of reinstatement against Warden Banks in his official capacity.

To assert a valid claim under § 1983 in an official-capacity suit, a plaintiff must show either that the official was acting pursuant to an unconstitutional policy or custom or that he or she possessed final authority over the subject matter at issue and used that authority in an unconstitutional manner.  *Nix v. Norman,* 879 F.2d 429, 433 (8th Cir.1989).  Ms. Nelson alleges that Warden Banks discriminated against her based on her gender and retaliated against her in his treatment of her and ultimately in discharging her.

From the record evidence, the Court observes that Warden Banks served as the Warden of the Varner Unit of the ADC from March 2010 to January 2013 (Dkt. No. 53, ¶ 58).  If the Court determines that Ms. Nelson is entitled to the prospective injunctive relief she seeks, the Warden of the Varner Unit of the ADC appears to be the proper party to be subject to the injunction.  *See Randolph v. Rodgers*, 253 F.3d 342, 345–46, n.7 (8th Cir. 2001).  For these reasons, sovereign immunity does not defeat Ms. Nelson's discrimination claim against Warden Banks in his official capacity.

### B.  Qualified Immunity

Ms. Nelson also brings claims against Warden Banks in his individual capacity.  To determine whether Warden Banks is entitled to qualified immunity, the Court must consider:  "(1) [whether] the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) [whether] the right was clearly established at the time of the deprivation."  *Parrish v. Ball,* 594 F.3d 993, 1001 (8th Cir.2010) (quotation omitted).  For the purposes of step two, "clearly established" means "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that

right." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). Either step of the qualified immunity

inquiry may be addressed first. *Pearson v. Callahan,* 555 U.S. 223, 236 (2009); *Jones v. McNeese*,

675 F.3d 1158, 1161 (8th Cir. 2012). Here, for the reasons explained in the Court's analysis of

Ms. Nelson's equal protection and retaliation claims, the Court determines that the record

evidence, viewed in the light most favorable to Ms. Nelson, do not demonstrate the deprivation of

a constitutional or statutory right. Therefore, Warden Banks is entitled to qualified immunity as

to Ms. Nelson's claims against him in his individual capacity.

### C.    Equal Protection Claim

Ms. Nelson alleges an equal protection violation. The elements of an equal protection

claim alleging gender discrimination under 42 U.S.C. § 1983 are the same as those of a Title VII

claim. *See Richmond v. Board of Regents*, 957 F.2d 595, 598 (8th Cir. 1992). Ms. Nelson can

establish a *prima facie* case of discrimination either by providing direct evidence of discrimination

or by creating an inference of unlawful discrimination under the three-step analysis set out in

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). *Bone v. G4S Youth Services,

LLC*, 686 F.3d 948, 953 (8th Cir. 2012). Direct evidence is evidence "showing a specific link

between the alleged discriminatory animus and the challenged decision, sufficient to support a

finding by a reasonable fact finder that an illegitimate criterion actually motivated" the adverse

employment action. *Torgerson,* 643 F.3d at 1043-44 (quoting *Griffith v. City of Des Moines*, 387

F.3d 733, 736 (8th Cir. 2004)). Therefore, "direct" refers to the causal strength of the proof, not

whether it is "circumstantial" evidence. *Id.* A plaintiff with strong direct evidence that illegal

discrimination motivated the employer's adverse action does not need the three-part *McDonnell

Douglas* analysis to get to the jury, irrespective of whether his strong evidence is circumstantial.

*Id.* However, "if the plaintiff lacks evidence that clearly points to the presence of an illegal motive,

he must avoid summary judgment by creating the requisite inference of unlawful discrimination through the *McDonnell Douglas* analysis, including sufficient evidence of pretext." *Id.* (quoting *Griffith*, 387 F.3d at 736).

### 1.      Direct Evidence Analysis

"To be entitled to direct evidence analysis, the plaintiff must present evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude sufficient to permit the fact finder to infer that that attitude was more likely than not a motivating factor in the employer's decision." *Rivers-Frison v. Se. Mo. Cmty. Treatment Ctr.*, 133 F.3d 616, 619 (8th Cir. 1998) (internal quotation marks omitted). Ms. Nelson contends that the record before the Court contains direct evidence of racial or gender discrimination by Warden Banks in the form of hostility and increased scrutiny (Dkt. No. 53, ¶ 4). Although she asserts this, she points to no specific record evidence. After examining the record evidence, the Court determines that Ms. Nelson has presented no direct evidence of gender discrimination in support of her claims. Accordingly, the Court will proceed through the *McDonnell Douglas* analysis.

### 2.      *McDonnell Douglas* Analysis

Under the *McDonnell Douglas* analysis, "the plaintiff bears the burden of establishing a *prima facie* case of discrimination." *McGinnis v. Union Pac. R.R.*, 496 F.3d 868, 873 (8th Cir. 2007). If a plaintiff makes out a *prima facie* case, he creates a presumption of unlawful discrimination, and the burden shifts to the defendant to come forward with evidence of a legitimate nondiscriminatory reason for its actions. *Id.* If the defendant articulates such a reason, the burden returns to the plaintiff to show the defendant's proffered reason is pretextual and that unlawful discrimination was the true reason for the adverse employment action. *Tyler v. Univ. of*

*Ark. Bd. of Trustees*, 628 F.3d 980, 990 (8th Cir. 2011). Pretext may be demonstrated by different means. *See, e.g., Roxas v. Presentation College*, 90 F.3d 310, 316 (8th Cir. 1996).

To establish a *prima facie* case of gender discrimination, a plaintiff must show that: (1) she is a member of a protected class; (2) she was meeting her employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees outside the protected class were treated differently. *Carpenter v. Con-Way Cent. Express, Inc.*, 481 F.3d 611, 616 (8th Cir. 2007). It is undisputed that Ms. Nelson can satisfy the first and third prongs of her *prima facie* case. However, Warden Banks disputes that Ms. Nelson was meeting the ADC's legitimate job expectations when she: (1) received a written warning in May 2011 for poor zone management and mismanagement of subordinates; (2) received an oral and written warning from Captain Spears related to her attitude; (3) displayed insubordinate behavior in a meeting with Captain Spears; and (4) failed to prevent an altercation between two inmates on July 28, 2011. In support of her position that she was meeting the ADC's legitimate job expectations, Ms. Nelson states that she received promotions and many above average evaluations and that all of her job evaluations were satisfactory (Dkt. No. 52, ¶¶ 3, 5).

The "[f]ederal courts do not sit as a super-personnel department that reexamines an entity's business decisions." *Torlowei v. Target*, 401 F.3d 933, 935 (8th Cir. 2005) (quoting *Wilking v. County of Ramsey*, 153 F.3d 869, 873 (8th Cir. 1998)). "The fact that an employee meets some expectations, however, does not mean that she meets the standard if she does not meet other significant expectations." *Calder v. TCI Cablevision of Missouri, Inc.*, 298 F.3d 723, 729 (8th Cir. 2002). The undisputed record evidence demonstrates that Ms. Nelson engaged in conduct resulting in progressive discipline. She does not dispute that, on at least one occasion, the hallway was congested under her watch which was against policy (Dkt. No. 53, ¶ 17); she does not dispute that

15

she "giggled" when being given a written warning (*Id.*, ¶ 22); she does not dispute that she yelled at Captain Spears during a meeting with him (*Id.*, ¶ 27); and she does not dispute the underlying facts of or policies that applied to the July 28, 2011, incident (Dkt. No. 56, ¶¶ 42-49). Based on the record evidence, construing all reasonable inferences in favor of Ms. Nelson, the Court determines that no reasonable juror could conclude that Ms. Nelson was meeting her employer's legitimate job expectations, and thus, she fails to satisfy the third element of her *prima facie* case.

Warden Banks further claims that Ms. Nelson has failed to show through record evidence that a similarly situated employee outside the protected class was treated differently or that an employee whose behavior was comparable was treated differently. Ms. Nelson alleges that similarly situated male employees were not disciplined as harshly or not disciplined at all for engaging in the same or similar conduct for which she was terminated. The Eighth Circuit has set a "'low threshold' for employees to be considered similarly situated" at the *prima facie* stage, "requiring only that the employees 'are involved in or accused of the same or similar conduct and are disciplined in different ways.'" *Orr v. City of Rogers*, 232 F. Supp. 3d 1052, 1063 (W.D. Ark. 2017) (quoting *Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 851 (8th Cir. 2005)). *Rodgers* itself illustrates just how low this threshold is. In *Rodgers*, a bank teller raised allegations of race discrimination after she was terminated from her position and established a prima facie case of discrimination based on alleged comparator evidence. *Id.* at 847 (determining the fourth element of the *prima facie* case established when the plaintiff bank terminated for engaging in nine transactions totaling over $650,000.00 compared herself to a senior teller, who had violated the same procedure during only a single transaction amounting to $1,200.00). Based on this and the record evidence before it, the Court cannot say that Ms. Nelson fails to meet the fourth element of her *prima facie* case as a matter of law.

Warden Banks alleges that, even if Ms. Nelson can establish a *prima facie* case, she cannot demonstrate pretext. This Court determines that, even if Ms. Nelson could establish a *prima facie* case of gender discrimination, she cannot survive Warden Banks' motion for summary judgment based on the pretext analysis. If Ms. Nelson establishes a *prima facie* case, the burden shifts to Warden Banks to articulate a legitimate, non-discriminatory reason for firing Ms. Nelson. *See Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 934 (8th Cir. 2006) (shifting the burden to defendant to provide a legitimate, non-discriminatory reason for plaintiff's termination where plaintiff makes out a *prima facie* case of discrimination). Warden Banks has done this.

Warden Banks cites Ms. Nelson's handling of the July 28, 2011, incident between inmates Mr. Bush and Mr. McGhee and the principles of progressive discipline as the reasons for Ms. Nelson's termination. Warden Banks claims that Ms. Nelson was aware on July 28, 2011, that inmate Mr. McGhee was mentally ill, behaving in an aggressive and hostile manner, and had packed up his belongings in anticipation of being removed from the barracks. Warden Banks claims that inmate Mr. Bush informed Ms. Nelson that Mr. McGhee had swung at him and that, despite this, Ms. Nelson placed Mr. Bush back inside the barracks demonstrating indifference to Mr. Bush's safety and his request that Mr. McGhee be moved out of the barracks. Warden Banks alleges that, based on the circumstances of the situation, Ms. Nelson should have separated the two inmates to prevent the assault on Mr. Bush. Warden Banks alleges that Ms. Nelson should have removed Mr. McGhee from the barracks or removed Mr. Bush from the barracks out of harm's way. Warden Banks alleges that, by failing to prevent an altercation between the two inmates, Ms. Nelson failed in her job duties by not coming to the assistance of someone being assaulted and did not perform within the scope of her job description.

Ms. Nelson contends that she conducted an investigation of the incident by questioning assigned staff member Nikita Brown and inmate Mr. Bush (Dkt. No. 52, ¶ 8). Ms. Nelson further contends that she had 200 hoe squad inmates under her control in the hallway and was short staffed (*Id.*). She maintains that entering the barracks to question inmate Mr. McGhee would have forced her to violate the policy prohibiting her from entering the barracks by herself (*Id.*). Ms. Nelson alleges that Warden Banks recognized that Ms. Nelson made a judgment call in the situation, albeit a wrong one (*Id.*).

The proffered non-discriminatory reasons for termination need not be factually correct so long as the employer honestly believed the asserted grounds at the time of the termination. *See Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir. 1995). The Court finds that Warden Banks has articulated a legitimate, non-discriminatory reason for Ms. Nelson's termination.

Since Warden Banks provides a legitimate, non-discriminatory reason for the termination, the burden returns to Ms. Nelson to present evidence that the reasons offered by Warden Banks are a pretext for discrimination. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). To prove pretext, Ms. Nelson must both discredit the employer's asserted reason for termination and show that the circumstances permit drawing the reasonable inference that the real reason for terminating her was her gender. *Johnson v. AT&T Corp.*, 422 F.3d 756, 763 (8th Cir. 2005). Ms. Nelson attempts to establish a reasonable inference of discrimination by comparing her situation to potential comparators. The Court identifies six individuals in the record evidence who may serve as potential comparators: Douglas Boultinghouse, Rodney Jones, Thomas Rowland, Captain Culclager, Sergeant Mingo, and Captain Spears.

This Court acknowledges that the standard in the Eighth Circuit Court of Appeals to determine whether employees are similarly situated at the pretext stage "is a search for a substantially similar employee, not for a clone." *Burton v. Arkansas Sec'y of State*, 737 F.3d 1219, 1231 (8th Cir. 2013) (quotations omitted). "To demonstrate that they are 'similarly situated,' he need only establish that [] he was treated differently than other employees whose violations were of *comparable seriousness.*" *Id.* (emphasis in original) (quotations omitted).

Even so, "[a]t the pretext stage, 'the test for determining whether employees are similarly situated to a plaintiff is a rigorous one.'" *Bone*, 686 F.3d at 956. To succeed at this stage of the proceedings, Ms. Nelson must show that she and the potential comparators she identifies were "similarly situated in all relevant respects." *Id.* (quoting *Rodgers*, 417 F.3d at 853). Thus, "[w]hat is relevant is [whether they] are involved in or accused of the same offense and are disciplined in different ways." *Id.* (quoting *Boner v. Bd. of Comm'rs*, 674 F.2d 693, 697 (8th Cir. 1982)). The employees used for comparison "must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Wierman v. Casey's Gen. Stores,* 638 F.3d 984, 994 (8th Cir. 2011) (quoting *Cherry v. Ritenour Sch. Dist.,* 361 F.3d 474, 479 (8th Cir. 2004)); *Tate v. Weyerhaeuser Co.*, 723 F.2d 598, 606 (8th Cir. 1983); *see also Jones v. Gerwens*, 874 F.2d 1534, 1541 (11th Cir. 1989) ("Courts have held that disciplinary measures undertaken by different supervisors may not be comparable for purposes of Title VII analysis.").

The Court finds that Lieutenant Boultinghouse is not a valid comparator. The parties agree that Lieutenant Boultinghouse was demoted on three separate occasions (Dkt. No. 53, ¶ 54). Ms. Nelson alleges that Lieutenant Boultinghouse was transferred to a different unit and demoted from lieutenant to sergeant because "he called Mr. Tony the N Word." (Dkt. No. 46, Ex. A, Nelson

Dep., at 129). Ms. Nelson alleges that Lieutenant Boultinghouse was again demoted when an inmate under Lieutenant Boultinghouse's supervision entered an unassigned barracks and stabbed another inmate (*Id.*, at 130). Ms. Nelson further contends that Lieutenant Boultinghouse was demoted a third time for a charge of sexual harassment (*Id.*).

It is unclear to the Court when these alleged incidents purportedly involving Lieutenant Boultinghouse occurred and who served as Lieutenant Boultinghouse's supervisor or supervisors at the time of his demotions. Warden Banks disputes his involvement in the demotions of Lieutenant Boultinghouse (Dkt. No. 48, ¶ 59). Ms. Nelson has provided no record evidence that Warden Banks served as Lieutenant Boultinghouse's supervisor at the time of the incidents nor has she provided evidence of any other supervisor common to both Ms. Nelson and Lieutenant Boultinghouse during the relevant time. Even were the Court to assume that Lieutenant Boultinghouse, as lieutenant, was under the same supervision and subject to the same standards as Ms. Nelson, the Court concludes that his alleged discriminatory speech and sexual harassment are not the same or similar to Ms. Nelson's alleged conduct. As to the allegation of inmate violence under Lieutenant Boultinghouse's command, it is unclear from the record if Lieutenant Boultinghouse had prior notice of a potentially violent incident between the inmates and purportedly failed to prevent the altercation. For these reasons, on the record evidence before it and construing all reasonable inferences in favor of Ms. Nelson, the Court finds that no reasonable juror could conclude that Lieutenant Boultinghouse is a proper comparator at the pretext stage.

Lieutenant Jones also fails as a comparator. The record shows that on September 8, 2011, Warden Banks issued Lieutenant Jones a written warning for bringing a weapon onto the grounds (Dkt. No. 46, Ex. Q). Lieutenant Jones stated to Warden Banks that he was carrying the weapon for his own protection due to alleged threats that he had received from his supervisor, Captain

Bobby Washington (*Id*.). Lieutenant Jones was disciplined for unsatisfactory work performance and failure to perform or carry out work related instructions. He was given six months' probation (Dkt. No. 4, Ex. Q). The parties agree that, in December 2011, Lieutenant Jones resigned in lieu of termination (Dkt. No. 53, ¶ 56). It is unclear from the record why Lieutenant Jones resigned. Ms. Nelson alleges that she was not given the option of resigning and that only men were given that option (*Id*.). Warden Banks contends that the incidents cited involving Lieutenant Jones – possessing a gun on the grounds but not in his possession – and Ms. Nelson – failing to assist or aid someone being assaulted – were not comparable. Even if the Court were willing to reject this conclusion advocated by Warden Banks, based on the record evidence before it and construing all reasonable inferences in favor of Ms. Nelson, the Court finds that no reasonable juror could conclude that Lieutenant Jones is a proper comparator. There is no record evidence that Lieutenant Jones was subject to progressive discipline for other incidents prior to the incident cited by Ms. Nelson.

Mr. Rowland also fails as a comparator at this stage. Ms. Nelson alleges that Mr. Rowland was disciplined for making copies of another employee's termination letter and passing the copies out (Dkt. No. 46, Ex. A, Nelson Dep., at 133). The parties admit that Mr. Rowland resigned in lieu of termination, was rehired in June 2010, and currently works in Internal Affairs for the ADC (Dkt. No. 53, ¶ 55). Ms. Nelson alleges that she was treated differently because she was never given the option of resigning (*Id*.). Ms. Nelson does not provide sufficient record evidence upon which the Court can base a determination that Mr. Rowland is a proper comparator. It is unclear to the Court what position Mr. Rowland held at the ADC at the time he first resigned and equally unclear which persons served as his supervisors at that time. There is no record evidence that Mr. Rowland was subject to progressive discipline for other incidents prior to the incident cited by Ms.

Nelson. Based on the record evidence and construing all reasonable inferences in favor of Ms. Nelson, the Court determines that no reasonable juror could conclude that Mr. Rowland's alleged conduct was similar to that of Ms. Nelson; as such, he fails as a comparator.

Ms. Nelson alludes to Captain Culclager and Sergeant Mingo as comparators. Ms. Nelson alleges that these two male supervisors argued and cursed at one another with fists balled up in front of staff and inmates (Dkt. No. 46, Ex. A, Nelson Dep., at 66-67). Ms. Nelson alleges that Major Byers gave them an oral warning only (*Id.*). Ms. Nelson fails to show that she and Captain Culclager and Sergeant Mingo were "similarly situated in all relevant aspects." *Rodgers*, 417 F.3d at 853. The Court notes that Captain Culclager and Sergeant Mingo, like Ms. Nelson, were under the supervision of Major Byers. However, as a captain and a sergeant, it is unclear to the Court if Captain Culclager and Sergeant Mingo were subject to the same standards as Ms. Nelson who served as a Lieutenant. Even if they were subject to the same standards, based on the record evidence and construing all reasonable inferences in favor of Ms. Nelson, Captain Culclager and Sergeant Minro did not engage in the same conduct as Ms. Nelson. There is no record evidence that Captain Culclager and Sergeant Mingo were subject to progressive discipline for other incidents prior to the incident cited by Ms. Nelson. The record is also devoid of detail surrounding the one incident Ms. Nelson does cite. The Court finds that, based on the record evidence before it, no reasonable juror could conclude that Captain Culclager and Sergeant Mingo are suitable comparators.

Finally, Ms. Nelson points to Captain Spears as a potential comparator (Dkt. No. 46, Ex. A, Nelson Dep., at 114). Ms. Nelson alleges that she informed Captain Spears of an incident where two inmates in the barracks "got into it," thereby putting Captain Spears on notice of the possibility of violence between the two inmates (*Id.*). Ms. Nelson alleges that Captain Spears pulled out the

two inmates, spoke with them, and returned them to the barracks (*Id*.). Later, the two inmates fought (*Id*.). Ms. Nelson points to this incident as an example of similar conduct.

Again, the record evidence even when all reasonable inferences are construed in favor of Ms. Nelson does not establish that Captain Spears is similarly situated to Ms. Nelson in all relevant respects so as to satisfy the rigorous test for comparators at the pretext stage. While Captain Spears's alleged conduct appears to be similar to Ms. Nelson's conduct, it is unclear if and to what extent Captain Spears was disciplined for this alleged incident. Even assuming that the conduct was similar, that Captain Spears was not disciplined, and that Captain Spears ultimately answers to the same supervisor—the Warden—the record is unclear as to the date of this alleged incident. It is unclear if Warden Banks held the position of Warden at the time. Further, there also is no record evidence that Captain Spears was subject to progressive discipline for other incidents prior to the incident cited by Ms. Nelson. Ms. Nelson has not shown through record evidence that Captain Spears was similarly situated in all relevant respects. For these reasons, on the evidence before the Court, the Court determines that no reasonable juror could conclude that Captain Spears is a valid comparator.

Construing all the record evidence in the light most favorable to Ms. Nelson, the Court concludes that Ms. Nelson has not met her burden of showing that any of the alleged comparators are similarly situated. As such, Ms. Nelson fails to prove her *prima facie* case and fails to prove pretext on the part of Warden Banks. The Court grants summary judgment in favor of Warden Banks on Ms. Nelson's gender discrimination claim.

### D.    Retaliation

Ms. Nelson also alleges that she was retaliated against for filing complaints within the ADC and with the EEOC (Dkt. No. 4, ¶ 25). Section 1983 provides a vehicle for redressing claims of

retaliation on the basis of the First Amendment. *Lewis v. Jacks*, 486 F.3d 1025, 1028-29 (8th Cir. 2007). First Amendment retaliation claims are analyzed under the same framework as claims of retaliation under Title VII. *Id*. (citing *Okruhlik v. Univ. of Ark*., 395 F.3d 872, 878 (8th Cir. 2005)). The burden shifting framework requires Ms. Nelson to establish a *prima facie* case of retaliation by showing that: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between the two. *Butler v. Crittenden Cnty., Ark.*, 708 F.3d 1044, 1050−51 (8th Cir. 2013).

It is well-established that the filing of an EEOC charge and a civil rights lawsuit are activities protected by the First Amendment. *See Tyler v. Univ. of Ark. Bd. of Trs*., 628 F.3d 980, 986 (8th Cir. 2011). Similarly, complaining about conduct that one reasonably believes to constitute harassment is protected activity. *See **Logan v. Liberty Healthcare Corp.**, 416 F.3d 877, 881 n.3 (8th Cir. 2005) (citing *Peterson v. Scott Cnty.*, 406 F.3d 515, 525 n. 3 (8th Cir. 2005)).

In terms of the causal connection, the plaintiff must show that the protected conduct was a "determinative—not merely motivating—factor in the employer's adverse employment decision." *Tyler*, 628 F.3d at 985-86 (quoting *Van Horn v. Best Buy Stores, L.P*., 526 F.3d 1144, 1148 (8th Cir. 2008) (internal quotation marks and citation omitted). If the plaintiff succeeds, the burden shifts to the employer to "articulate a legitimate, nondiscriminatory reason for the action." *Id*., at 986 (quoting *Maxfield v. Cintas Corp. No. 2*, 427 F.3d 544, 550 (8th Cir. 2005)). If the defendant does so, the plaintiff can still prevail on a final step of the *McDonnell Douglas* analysis by proving, by a preponderance of the evidence, that the reasons proffered by the employer are "merely pretext for discrimination." *Id*. (quoting *Richmond*, 957 F.2d at 598).

Warden Banks alleges that Ms. Nelson has failed to establish the third prong of causation. Defendants accept Ms. Nelson's assertion that she filed an EEOC charge on July 5, 2011,[5] but argue that there is no temporal connection as a matter of law because that alleged conduct occurred almost two months prior to her termination on September 2, 2011, and well over a month before the termination was even recommended on August 15, 2011 (Dkt. No. 47, at 23). They further contend that, regardless of temporal proximity, gradual adverse job actions against Ms. Nelson began in May 2011, well before Ms. Nelson engaged in protected activity.

Ms. Nelson alleges that she was retaliated against for filing a complaint within the ADC (Dkt. No. 4, ¶ 25). The record evidence shows that Ms. Nelson wrote a letter to Mr. Mays and copied the letter to "Ray Hobbs, EEOC Office" on June 8, 2011, complaining of gender discrimination (Dkt. No. 46, Ex. G). Ms. Nelson filed her first formal EEOC charge on August 10, 2011.[6] Ms. Nelson further contends that, when she complained about discrimination in the

---

[5] The Court notes that Ms. Nelson first alleged filing an EEOC charge on June 5, 2011 (Dkt. No. 4, ¶ 20). This date appears to change to July 5, 2011, in both the defendants' motion for summary judgment (Dkt. No. 47, at 22) and Ms. Nelson's response to defendants' statement of undisputed material fact (Dkt. No. 53, ¶ 62). There is no record evidence of a filed EEOC charge in either June or July 2011.

[6] Warden Banks maintains that, because the EEOC Charge filed October 13, 2011, is the only charge to allege retaliation and because that Charge alleges the retaliation occurred between August 15, 2011, and September 2, 2011 (Dkt. No. 53, ¶67), Ms. Nelson exhausted her administrative remedies only as to her termination and not as to any other adverse employment action. The Court disagrees. Ms. Nelson contends that the protected act was either an internal ADC complaint or the filing of her EEOC Charge on August 10, 2011, and that the retaliatory act occurred sometime between August 15, 2011, and September 2, 2011, the date on which Ms. Nelson was terminated. Ms. Nelson properly filed a timely, separate EEOC Charge on October 13, 2011, alleging retaliation based on these alleged events. *See Richter v. Advance Auto Parts, Inc.,* 686 F.3d 847 (8th Cir.2012).

August 29, 2011 meeting, Warden Banks reacted in a hostile manner and terminated Ms. Nelson a few short days later (Dkt. No. 54, at 5).

Generally, "more than a temporal connection is required to present a genuine factual issue on retaliation," *Peterson*, 406 F.3d at 524, and only in cases where the temporal proximity is very close can the plaintiff rest on it exclusively, *Smith v. Fairview Ridges Hosp*., 625 F.3d 1076, 1087-88 (8th Cir. 2010). As more time passes between the protected conduct and the retaliatory act, the inference of retaliation becomes weaker and requires stronger alternate evidence of causation. *Sims v. Sauer-Sundstrand Co*., 130 F.3d 341, 343 (8th Cir. 1997). The inference vanishes altogether when the time gap between the protected activity and the adverse employment action is measured in months. *See, e.g., Littleton v. Pilot Travel Ctrs., LLC*, 568 F.3d 641, 645 (8th Cir. 2009) (determining that a temporal gap of seven months was "not sufficiently contemporaneous" to indicate a causal connection); *Recio v. Creighton Univ.*, 521 F.3d 934, 941 (8th Cir. 2008) (concluding that a six-month gap was too long to give rise to inference of causal connection).

A temporal connection exists between the filing of the August 10, 2011, EEOC charge and Ms. Nelson's termination on September 2, 2011. However, in considering whether there is a causal connection between protected activity and an adverse action, the Eighth Circuit has held that "more than a temporal connection is generally required to present a genuine issue of material fact on retaliation." *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999). In further support of her contention that Warden Banks' conduct was motivated by discrimination and retaliation, Ms. Nelson alleges that Captain Lassandra Malone "contacted [Ms.] Nelson when she came off suspension and told [Ms.] Nelson that upper administration, including Mr. Banks, had told her that [Ms.] Nelson was filing a lawsuit regarding discrimination. I aShe told [Ms.] Nelson the administration, including Mr. Banks, was mad at me" (Dkt. No. 54, at 9). Ms. Nelson alleges that

Captain Spears told her the same thing. Ms. Nelson returned from suspension on July 10, 2011. It is unclear at what time Ms. Nelson alleges Captain Spears spoke with her.

Warden Banks contends that the alleged statements of Captain Malone and Captain Spears were not properly disclosed by Ms. Nelson at any point during discovery despite being responsive to discovery requests propounded, that Warden Banks is not able to inquire about these statements at this point because discovery has closed, and that these statements are inadmissible hearsay. Inadmissible material is not "properly available to defeat or support the [summary judgment] motion." *Firemen's Fund Ins. Co. v. Thien*, 8 F.3d 1307, 1310 (8th Cir. 1993); *accord Duluth News-Tribune v. Mesabi Publ'g Co.*, 84 F.3d 1093, 1098 (8th Cir. 1996) ("In evaluating the evidence at the summary judgment stage, we consider only those responses that are supported by admissible evidence."). Although the court must review the record on summary judgment in the light most favorable to the non-moving party, courts "do not stretch this favorable presumption so far as to consider as evidence statements found only in inadmissible hearsay." *Mays v. Rhodes*, 255 F.3d 644, 648 (8th Cir. 2001); *Cronquist v. City of Minneapolis*, 237 F.3d 920, 927 (8th Cir. 2001) (holding that affidavits that are based on hearsay cannot defeat a summary judgment motion).

As an initial matter, the Court determines that Ms. Nelson did not properly disclose this evidence during discovery in response to requests propounded by Warden Banks. By disclosing these statements now, only in response to a pending motion for summary judgment, Ms. Nelson effectively forecloses Warden Banks from conducting any meaningful discovery regarding the purported statements.

Ms. Nelson contends that the alleged statements of Captain Malone and Captain Spears are admissible as opposing party statements under Rule 801(d)(2) of the Federal Rules of Evidence.

Neither Captain Malone nor Captain Spears are parties to this lawsuit. The Court acknowledges that, by suing Warden Banks in his official capacity for prospective injunctive relief, Ms. Nelson likely maintains that she properly expands the concept of a party opponent to reach the ADC, but Ms. Nelson does not articulate this. If so, statements by Captain Malone or Captain Spears may qualify as admissions by a party opponent under Federal Rule of Evidence 801(d)(2)(D). *See Geleta v. Gray*, 645 F.3d 408, 414-15 (D.C. Cir. 2011) (because plaintiff filed suit against District of Columbia mayor in his official capacity, District was party to suit, and statements made by District employees concerning matters within scope of their employment were admissible against District under Rule 801(d)(2)(D)). The Court observes that the alleged statements by Captain Malone appear to contain two levels of hearsay, with Captain Malone repeating to Ms. Nelson statements purportedly made by Warden Banks to Captain Malone. Ms. Nelson does not address this issue, and Warden Banks points out that Ms. Nelson has not disclosed Captain Malone as a potential witness at the trial of this matter. All of these issues make the Court skeptical of these alleged statements by Captain Malone and Captain Spears and the ability of Ms. Nelson to rely on the statements to overcome Warden Banks's motion for summary judgment on the retaliation claim.

Even if the Court were to assume that Ms. Nelson could establish a causal connection between her complaints of discrimination and her termination based on the alleged statements of Captain Malone and Captain Spears so as to establish a *prima facie* case of retaliation, she cannot demonstrate that Warden Banks' explanation for her termination was false and that retaliation was the but-for cause, or any motivating cause, for her termination. Warden Banks maintains that he terminated Ms. Nelson based on the seriousness of the events of July 28, 2011, and her record and the principles of progressive discipline (Dkt. No. 53, ¶ 50). Ms. Nelson must show that his

explanation is unworthy of credence because it has no basis in fact or she must persuade the Court that a prohibited reason—more than the proffered reason—likely motivated Warden Banks. *Torgerson v. City of Rochester*, 605 F.3d 1031, 1048 (8th Cir. 2010). Ms. Nelson has failed to show this based on the record evidence. Ms. Nelson has not proven by a preponderance of the evidence that Warden Banks' reason for her termination was pretext. *Tyler*, 628 F.3d at 986. The undisputed record evidence demonstrates that Ms. Nelson engaged in conduct resulting in progressive discipline. She does not dispute that, on at least one occasion, the hallway was congested under her watch which was against policy (Dkt. No. 53, ¶ 17); she does not dispute that she "giggled" when being given a written warning (*Id.*, ¶ 22); she does not dispute that she yelled at Captain Spears during a meeting with him (Dkt. No. 56, ¶ 27); and she does not dispute the underlying facts of or policies that applied to the July 28, 2011, incident (*Id.*, ¶¶ 42-49). For the reasons explained, she has not persuaded the Court on the record evidence that a prohibited reason – more than the proffered reason – likely motivated Warden Banks. The Court grants summary judgment in favor of Warden Banks on Ms. Nelson's retaliation claim.

## IV. Conclusion

The Court grants summary judgment to defendants Warden Banks and the ADC as to Ms. Nelson's gender discrimination and retaliation claims (Dkt. No. 46). The ADC is entitled to sovereign immunity. Further, to the extent Warden Banks raises the defense of qualified immunity in response to Ms. Nelson's claims against him in his individual capacity, the Court grants summary judgment in favor of Warden Banks. Ms. Nelson's claims are hereby dismissed with prejudice. Warden Banks and the ADC's pending motion *in limine* and motion to substitute attorney are denied as moot (Dkt. Nos. 60, 65).

So ordered this 30th day of August, 2018.

Kristine G. Baker
United States District Judge